# MEMORANDUM OF POINTS AND AUTHORITIES

## 1. Introduction.

This case involves various claims asserted by Plaintiff regarding the handling of his federal student loan. Specifically, Plaintiff has sued ECMC for purported violations of the FDCPA, Rosenthal Act, TCPA and FCRA. However, as will be described below, Plaintiff has not alleged (and cannot allege) sufficient facts to state a claim under any of those statutes. ECMC therefore respectfully requests that the instant Motion be granted in its entirety.

## 2. Legal Standard.

A motion to dismiss under Rule 12(b)(6) allows dismissal of a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The Court may dismiss the complaint for: "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). A complaint survives a motion to dismiss only if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for the Court to assume "the [plaintiff] can prove facts that [he or she] has not alleged . . ." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## 3. Argument.

### A. Plaintiff's FDCPA claim fails because Plaintiff has not adequately alleged that ECMC is a "debt collector."

The FDCPA was enacted "to eliminate abusive debt collection practices *by debt collectors*." 15 U.S.C. § 1692(e), italics added. Thus, ECMC can only be liable under the FDCPA if it is deemed a "debt collector" under the Act. *Rutz v. ECMC*, 2012 WL 78394 at *2 (S.D. Cal. Jan. 9, 2012). If an entity falls outside the

definition of "debt collector," the requirements of the FDCPA do not apply. *Pelfrey v. ECMC*, 71 F. Supp. 2d 1161, 1166 (N.D. Ala. 1999), aff'd, 208 F.3d 945 (11th Cir. 2000).

A dispositive issue is therefore whether ECMC is a "debt collector" under the FDCPA. "The plaintiff in an FDCPA action bears the burden of proving the defendant's debt collector status." *Moda v. L. Offs. of Robert C. Aronoff*, 2017 WL 4286832, at *4 (C.D. Cal. Sept. 27, 2017).

The FDCPA defines the term "debt collector" as follows: "[A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another . . ." 15 U.S.C. § 1692a(6).

Plaintiff's FAC does not allege any *facts* showing that ECMC meets the above criteria. The FAC contains only a legal conclusion that ECMC is a "debt collector" under the FDCPA. FAC, ECF No. 9, ¶¶ 3, 18, 26. Such legal conclusions do not satisfy the federal pleading standard. A claim under the FDCPA requires the plaintiff "to allege well-pleaded facts, as opposed to legal conclusions." *Sayeed v. Cheatham Farms Master Homeowners' Ass'n*, 2018 WL 4297480, at *3 (C.D. Cal. Sept. 7, 2018). Plaintiff's FAC falls well short of satisfying that burden.

Moreover, many Courts have previously held that ECMC is not a debt collector. *See, e.g., Rutz*, 2012 WL 78394, at *2; *Rowe v. ECMC*, 730 F. Supp. 2d 1285, 1289 (D. Or. 2010). Plaintiff cannot truthfully allege that ECMC is a debt collector because his student loan was not in default when ECMC obtained it. 15 U.S.C. § 1692a(6)(F)(iii); *Skerry v. Massachusetts Higher Educ. Assistance Corp.*, 73 F. Supp. 2d 47, 54 (D. Mass. 1999) (finding that the FDCPA does not apply to an entity that obtained the plaintiff's student loan prior to default). Accordingly, Plaintiff's FDCPA claim should be dismissed without leave to amend.

/ / /

### B.  Plaintiff's Rosenthal Act claim fails because it is preempted by the HEA.

Plaintiff complains about the collection activity allegedly conducted on his federal student loan. FAC, ECF No. 9, ¶¶ 6, 7. However, the Ninth Circuit has held that such state law claims are preempted by the Higher Education Act, 20 U.S.C. § 1071, et seq. ("HEA"), and has defined the breadth of the preemption as follows:

"[T]he preemption includes *any* State law that would hinder or prohibit *any* activity [taken to collect federal student loans] prior to litigation." *Brannan v. United Student Aid Funds, Inc.*, 94 F.3d 1260, 1266 (9th Cir. 1996).

The preemption has been reaffirmed numerous times, including by this Court with respect to a Rosenthal Act claim specifically. *Pirouzian v. SLM Corp.*, 396 F.Supp.2d 1124, 1129-1130 (S.D. Cal. 2005) (holding preemption is required "in any circumstance where state law regulates pre-litigation collection activity" and that under *Brannan*, "*all* state laws that prohibit debt collectors from doing *anything* related to pre-litigation federal collection are preempted.")

Thus, Plaintiff's Rosenthal Act claim is clearly preempted by the HEA based on *Brannan* and *Pirouzian*.

It should also be noted that preemption under the HEA may be express or implied. *Chae v. SLM Corp.*, 593 F.3d 936, 942 (9th Cir. 2010). Express preemption occurs where federal law explicitly defines the extent to which its enactments preempt state law. *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 299 (1988). Implied preemption occurs where there is conflict between the HEA and state law, or where complying with state law would hinder compliance under the HEA. *Cadle Co. v. Banner*, 394 B.R. 292, 304 (D. Conn. 2008).

Preemption may occur directly through congressional action or by federal agencies acting under congressional authority. *Brannan*, 94 F.3d at 1263. In the student loan collection field, Congress and the United States Department of Education ("ED") have established an extensive, elaborate, and preemptive set of

federal statutes and regulations governing the involved entities like ECMC. This framework both expressly and impliedly preempts Plaintiff's claims.

In this regard, the HEA authorizes the ED to "prescribe such regulations as may be necessary to carry out the purposes" of the HEA. 20 U.S.C. § 1082(a)(1). Under that authority, the ED has promulgated a series of comprehensive regulations, including regulations that articulate the standards for collecting student loans and direct the pre-litigation collection efforts of lenders, guaranty agencies, and third-party debt collectors. 34 C.F.R. §§ 682.410 and 682.411. These regulations also contain language that expressly preempts any state law "that would conflict with or hinder satisfaction of the requirements" of the HEA's collection provisions. 34 C.F.R. § 682.410(b)(8); 34 C.F.R. § 682.411(o)(1).

Courts consistently rely on this language to find state law claims implicating the HEA and its related regulations to be preempted. *See e.g. Hunt v. Sallie Mae, Inc.*, 2011 WL 2847428 (E.D. Mich. July 19, 2011) at *3 ("Plaintiff's state-law claims are expressly preempted by the language in 34 C.F.R § 682.411(o)"); *Martin v. Sallie Mae, Inc.*, 2007 WL 4305607, at *8 (S.D.W. Va. Dec. 7, 2007) at *8 (holding that the HEA "preempts any state cause of action that conflicts with it.").

The ED has also issued a significant formal interpretation which states that it is the "Secretary's intention to preempt State law" by issuing a regulatory framework for pre-litigation collection, and explains that recognizing liability under inconsistent state law would "thwart the Congressional intention implemented in the regulations." 55 Fed. Reg. 40120-01.

Not only is Plaintiff's Rosenthal Act claim expressly preempted, it is also preempted because it conflicts with the HEA. Conflict preemption exists "where the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *English v. General Elec. Co.*, 496 U.S. 72, 79 (1990). Here, conflict preemption applies to Plaintiff's Rosenthal Act claim because it conflicts with the aforementioned due diligence and collection

requirements of the HEA and its implementing regulations, and it therefore creates obstacles to the congressional purpose and the HEA's objectives.

In line with this reasoning, the Ninth Circuit has repeatedly preempted state law claims such as Plaintiff's in the instant case, as the HEA indisputably requires uniformity. *Brannan*, 94 F.3d at 1263 ("[E]xposure to lawsuits under fifty separate sets of laws and court systems could make lenders reluctant to make new federally-guaranteed student loans."); *Chae*, 593 F.3d at 950 ("[W]e conclude, beyond any doubt, that subjecting the federal regulatory standards to the potentially conflicting standards of fifty states on contract and consumer protection principles would stand as a severe obstacle to the effective promotion of the funding of student loans. Such an obstacle, which we consider hostile to the purposes of Congress in this program, must bow to the overriding principles of conflict preemption and federal law supremacy.")

Plaintiff's FAC alleges that ECMC was engaged in the business of collecting a federal student loan debt from him, and that ECMC's efforts violated the Rosenthal Act; a California law. Thus, in the instant case, Plaintiff is attempting to enforce exactly such state law "conflicting standards" the Ninth Circuit held in both *Brannan* and *Chae* are preempted by the HEA.

Plaintiff's Rosenthal Act claim should therefore be dismissed.

### C. Plaintiff's TCPA claim fails because the FAC does not adequately allege that ECMC used an "automatic telephone dialing system" to call him.

Plaintiff's third cause of action is for alleged violation of the TCPA. FAC, ECF No. 9, ¶¶ 29-38. Plaintiff alleges that ECMC called him without his consent using an automatic telephone dialing system (commonly referred to as an "ATDS" or "autodialer"). *Id.*, 36.

However, Plaintiff fails to state a TCPA claim under *Iqbal/Twombly*, and also pursuant to the Supreme Court's relatively recent decision in *Facebook, Inc. v.*

*Duguid*, 141 S. Ct. 1163 (2021), wherein the Supreme Court held that "[t]o qualify as an 'automatic telephone dialing system,' a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Id.*, at 1167.

Here, Plaintiff merely alleges in a conclusory fashion that ECMC used an autodialer to call him.  FAC, ECF No. 9, ¶ 36.  Nowhere in the FAC does Plaintiff allege that ECMC's device included a random or sequential number generator, as required.  Nor can Plaintiff allege such facts.

Furthermore, the FAC specifically alleges that Plaintiff was called because he owed a federal student loan.  In other words, Plaintiff concedes that the calls he allegedly received were not random and that he was the intended recipient of the calls.  As multiple District Courts have found, the "targeted nature" of the calls "contradicts the notion that Plaintiff's telephone number could have been produced through a random or sequential number generator."  *Wilbor v. GG Homes, Inc.*, 2022 WL 867024, at *5 (S.D. Cal. Mar. 22, 2022).

Plaintiff has not alleged that the equipment ECMC used to call him included a random or sequential number generator, and cannot so allege.  Accordingly, the TCPA claim should be dismissed with prejudice.

> **D.     Plaintiff's FCRA claim fails because Plaintiff has no private right of action and has not alleged that ECMC received a dispute from a credit reporting agency.**

Plaintiff's last claim against ECMC is for alleged violation of the FCRA.  He contends that ECMC furnished inaccurate information about his student loan to the credit reporting agencies.

As explained by the Ninth Circuit, "the FCRA imposes some duties on the sources that provide credit information to [credit reporting agencies], called 'furnishers' in the statute." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009).  The duty of a furnisher to provide accurate information to the

credit reporting agencies is set out in Section 1681s-2(a) of the FCRA. *Id.* at 1154; see also 15 U.S.C. § 1681s-2(a).

However, the "[d]uties imposed on furnishers under subsection (a) are enforceable only by federal or state agencies." *Gorman*, 584 F.3d at 1154.

"It is the law in the Ninth Circuit that based on the plain language of the statute, individuals may not pursue claims against furnishers of information based on a violation of section 1681s-2(a)." *Personius v. Specialized Loan Servicing LLC*, 2017 WL 6942649, at *4 (C.D. Cal. Nov. 22, 2017).

"This limitation on liability and enforcement is reinforced by subsection (d) of § 1681s-2, which provides that subsection (a) 'shall be enforced exclusively under section 1681s of this title by the Federal agencies and officials and the State officials identified in that section.' Consequently, private enforcement under §§ 1681n & o is excluded." *Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1059 (9th Cir. 2002).

Accordingly, Plaintiff has no private right of action to allege a claim that ECMC inaccurately reported derogatory information to the credit bureaus.

To the extent Plaintiff alleges that ECMC failed to reasonably investigate a dispute, such a claim would be brought under section 1681s-2(b) of the FCRA. But, this claim necessarily fails too, because Plaintiff has not alleged that ECMC received a dispute from a credit reporting agency, which is a legal perquisite to the claim. Plaintiff only alleges that he, himself, notified ECMC of his dispute. FAC, ECF No. 9, ¶ 50. This is insufficient as a matter of law.

As one District Court held, confirming the binding Ninth Circuit precedent on the issue: "The furnisher's duty to investigate, however, does not arise unless it receives notice of the dispute from the CRAs directly. Bypassing the filter and contacting the furnisher of credit information directly does not actuate the furnisher's obligation to investigate nor does it give rise to a private right of action." *Roybal v. Equifax*, 405 F. Supp. 2d 1177, 1180 (E.D. Cal. 2005), citing *Nelson*, 282

F.3d at 1060; see also *Gorman*, 584 F.3d at 1156 ("The furnisher's investigation obligation under § 1681 is triggered by receiving the CRA notification").

Plaintiff has not alleged that ECMC received notification from a CRA that Plaintiff disputed his credit information. Consequently, Plaintiff's FCRA claim fails as a matter of law.

**4.   Conclusion.**

For the foregoing reasons, ECMC respectfully requests that this Motion be granted in its entirety, and that Plaintiff's FAC be dismissed with prejudice.

DATED: June 16, 2022                CARLSON & MESSER LLP


                                    By:   s/Martin Schannong
                                          David J. Kaminski
                                          Martin Schannong
                                          Attorneys for Defendant
                                          EDUCATIONAL CREDIT
                                          MANAGEMENT CORPORATION